**JORDAN B. SCHAER**
California State Bar No. 354489
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Jordan_Schaer@fd.org

Attorneys for Jose Antonio Reyes, Jr.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE ANTONIO REYES, Jr.,<br>Defendant. | CASE NO.: 25-CR-4147-JES<br><br>Hon. James E. Simmons, Jr.<br>Courtroom 4B<br>Date: August 21, 2026<br>Time: 9:00 a.m.<br><br>**JOSE ANTONIO REYES, JR.'S SENTENCING MEMORANDUM** |

## I. INTRODUCTION

Although Jose Antonio Reyes, Jr. had no criminal history, and now has a federal felony conviction, he is more prepared to build a better life for himself than before his arrest. **The Court should sentence Mr. Reyes to one year of probation. The government also recommends one year of probation.** Mr. Reyes welcomes conditions that he complete substance abuse and mental health treatment as directed by his probation officer.

This recommendation is not to diminish the seriousness of this case. By bringing weapons and ammunition to Mexico, Mr. Reyes repeatedly made Mexico more unsafe. He contributed to at least two people getting shot. But, as explained below, the Court need not sentence Mr. Reyes to any further time in custody to achieve the goals of sentencing.

## II. HISTORY AND CHARACTERISTICS

Mr. Reyes is a young father who had a problem with drug and alcohol abuse for years. Mr. Reyes has no prior criminal history. His history and characteristics demonstrate that he can be trusted in the future because of how hard he worked to improve his problems with substance abuse despite significant setbacks in life, each will be addressed in turn.

### A. Early Childhood Trauma

Mr. Reyes' childhood exposed him to adverse childhood experiences that shape how he deals with stress, compounding his problems with substance abuse. *See* PSR ¶¶ 56–59. As a young child, Mr. Reyes encountered physical violence, temporarily losing a parent to the immigration system, and deep poverty:

1. Before the age of six, Mr. Reyes witnessed his father pulling his mother's hair and hitting her.
2. Mr. Reyes' father hit Mr. Reyes and his siblings whenever he got agitated.
3. When Mr. Reyes was eight, his mother was taken into immigration custody—so Mr. Reyes had to stay with a friend, and then with his second-grade teacher, until ending up with his aunt in Long Beach.
4. Mr. Reyes then went into his physically abusive father's custody.
5. Mr. Reyes encountered physical abuse from his mother as well, getting hit with a hanger or shoe.
6. Mr. Reyes' family struggled financially, leaving him to eat only tortillas with cold cheese and a soda as a meal.

These experiences shape how Mr. Reyes makes decisions. *See, e.g.*, Jillian J. Turanovic, *Victimization and its Consequences over the Life Course*, 52 CRIME & JUST. 265, 266 (2023). Trauma experienced at an early age can limit how children and adolescents develop coping skills. *Id.* at 292. This kind of trauma prevents children from "forming secure attachments to caregivers" which is "one

of the most important developmental milestones in early life[.]" *Id.* at 295 (citations omitted). Without "a safe person to turn to[,]" children experience "fright without solution" which "can lead to the early development of insecure or disorganized attachments, from which a plethora of deleterious outcomes can follow." *Id.* "[D]isorganized attachment styles" includes "an intense fear of abandonment, risky behavior . . . and ongoing feelings of emptiness[.]" *Id.* Each of these manifested in Mr. Reyes' life. Mr. Reyes exhibited significant risky behavior regularly as a teenager and young adult, and this can be traced to the trauma he faced as a child. Mr. Reyes sought fulfillment, to fix feelings of emptiness, from criminals in his neighborhood. He was looking for anything to fix something he did not know how to fix by himself.

But there is hope for the future. Adverse childhood experiences can be addressed through mental health treatment. Mr. Reyes welcomed opportunities for treatment while on pretrial release and will continue to seek out counseling after his sentencing. When combined with probation, this is a strong check on recidivism.

**B. Problems with Substance Abuse**

Mr. Reyes started with abusing alcohol, but the problem escalated into regular cocaine and alcohol abuse since 2019, hurting his relationships with his family. Presentence Investigation Report, Dkt. 49 ("PSR") ¶¶ 73–74. Mr. Reyes' neighbors introduced him to cocaine when he was 24 years old. When Mr. Reyes' son was born, Mr. Reyes was already deep in addiction. Mr. Reyes isolated from his family, failed to visit his wife and child, showed up drunk or high to his mother's house, and got in trouble at work because he kept showing up late because he was hungover. This went on without relief until his arrest. *Id.*

The chronic cocaine abuse greatly worsened Mr. Reyes' decision-making ability. *See* Amrei Wittwer et al., *Risky Decisions in a Lottery Task are Associated with an Increase of Cocaine Use*, 7 FRONTIERS IN PSYCHOLOGY art. 640 (2016),

https://pmc.ncbi.nlm.nih.gov/articles/PMC4860409/ ("Taken together, our results indicate that cocaine users who increased their consumption over a period of 1 year show deficits in the processing of risky information accompanied with increased risk-taking."); Antonio Verdejo-Garcia, *Social Cognition in Cocaine Addiction*, 111 PROCEEDINGS OF THE NATL. ACADEMY OF SCIENCES 2406 (2014), https://pmc.ncbi.nlm.nih.gov/articles/PMC3932928/ (highlighting how cocaine abuse creates a deficit in decision-making by warping the brain's representation of natural and social rewards for following rules).

Like with Mr. Reyes' adverse childhood experiences, Mr. Reyes wants to address these problems. He is working towards completing substance abuse treatment and plans to continue treatment after his sentencing. *See infra*.

**C. Family Responsibility**

Mr. Reyes knows he betrayed his family. Mr. Reyes' son has level 3 autism. *Id.* ¶ 60. This means that his son has "very limited initiation of social interactions, and minimal response to social overtures from others[.]" Einat Waizbard-Bartov et al., *Autism Severity and its Relationship to Disability*, 16 AUTISM RSCH. 685, 686 (2023). Level 3 autism is the most severe and causes the most impairment. *Id.* It involves "severe deficits in verbal and nonverbal social communication skills caus[ing] severe impairments in functioning." *Id.* In Tijuana, Mr. Reyes' son sees a behavioral therapist in Tijuana every two weeks and is going to school part-time because of his disability. PSR ¶ 60.

Before this case, Mr. Reyes had intended to have his wife Blanca Carrillo-Melchor and son live in the United States. Mr. Reyes filed an I-130 petition for Ms. Carrillo-Melchor; his son has U.S. citizenship through Mr. Reyes. Because of the severity of Mr. Reyes' son's autism, his son cannot travel without Ms. Carrillo-Melchor. His son cannot cross the international border without a trusted person. And there are only two: Mr. Reyes and Ms. Carrillo-Melchor. Without stable income and with this federal criminal case pending, Mr. Reyes has not made

progress on getting his wife a visa to live here. *See id.* ¶¶ 82–84 (Mr. Reyes' overall income decreased from $27 per hour full time to $21 per hour part time after his arrest in this case); ¶ 88 (Mr. Reyes also has significant debt). Instead of advancing everyone's future, Mr. Reyes allowed his problems with cocaine and alcohol abuse, and then the choices he made in this case, to keep his wife working as a waitress in Tijuana while trying to take care of a child by herself, a child with the highest level of autism severity/disability. Mr. Reyes will live with that shame for the rest of his life, trying to make it up to his family. This will motivate him to maintain his sobriety going into the future because of how dire the consequences clearly are when he does not.

## III. NATURE OF THE OFFENSE

As mentioned above, this is a serious case. Mr. Reyes brought weapons and ammunition into Mexico then sold them to criminals. Mexican police recovered two guns at crime scenes with people shot at each. Mr. Reyes also brought many other weapons and ammunition into Mexico. Mexico is less safe because Mr. Reyes repeatedly agreed to act as a straw purchaser of firearms. Mr. Reyes will forever regret contributing to the endemic violence in Tijuana, his home. *Id.* ¶ 32.

To stop Mr. Reyes, law enforcement needed only to do a little: after seizing the ammunition on June 3, 2025, Mr. Reyes stopped purchasing weapons and ammunition. *See id.* ¶¶ 8–10. He refused to bring any more to Mexico. He also immediately confessed to the offense to which he is pleading guilty. *See id.* ¶ 15.

Mr. Reyes knew that he needed to make big changes in his life. Mr. Reyes severed ties with his neighborhood in Tijuana. His family moved out of that home and lives in an entirely different part of Tijuana. Mr. Reyes focused on work and making enough to bring his family to the United States. Despite all this, Mr. Reyes still needed greater support but was not receiving it.

## IV. MOTIVATION AND REMORSE

In committing this offense, Mr. Reyes sought validation from the people who gave him the cocaine, riding the thrill of feeling popular in his immediate community instead of focusing on the people who mattered in his life—his family—who still love and support him today. *Id.* ¶¶ 31, 63. Mr. Reyes did not appreciate how his substance abuse warped everything around him, turning behavior that is without doubt unacceptable into something that can be rationed with.

This case has been a wake up call for Mr. Reyes, something he is glad to have, though so regretful that it was at the expense of his family and Mexican public safety. Mr. Reyes is committed to never again engage in a criminal lifestyle and to stay away from his old neighborhood/neighbors in Tijuana. His family is here to help him, he knows that now, and that he can go to them when he needs help in the future.

## V. POST-OFFENSE REHABILITATION

While on pretrial release, everything changed. Mr. Reyes received regular substance abuse treatment through multiple modalities—weekly outpatient sessions, self-help meetings two to three times a month, and drug testing. He is set to complete substance abuse treatment later this month. Mr. Reyes consistently submitted negative tests after he was released. *Id.* ¶ 76. Mr. Reyes plans to continue substance abuse treatment, either in custody or on supervision. *Id.* ¶ 77. Mr. Reyes also completed a cognitive behavioral treatment program. Mr. Reyes appreciates he needs to continue working to develop tools to cope with stressors as they come up.

The entire time on supervision, Mr. Reyes never had an issue with his Pretrial Services officer or any condition of supervision. *Id.* ¶¶ 24–25. And the conditions of supervision were more onerous than many defendants encounter in our district: except for one visit, Mr. Reyes was largely unable to see his young son with high-

needs autism in Mexico; Mr. Reyes wore an ankle monitor without complaint for the entire time he's been on supervision. Mr. Reyes' success on pretrial release shows the Court can and should trust him on probation.




## VI. CONCLUSION

Now, Mr. Reyes will have a permanent felony conviction. Mr. Reyes lost out on a promising career because of his actions in this case. *Id.* ¶ 31. But more importantly, after his actions in this case and subsequent arrest, Mr. Reyes made big changes in his life such that he is unlikely to reoffend and motivated to maintain his sobriety. The Court should follow the joint recommendation of probation in Mr. Reyes' case.

Respectfully submitted,

Dated: August 14, 2026

*s/ Jordan B. Schaer*

Federal Defenders of San Diego, Inc.
Attorneys for Jose Antonio Reyes, Jr.
Email: Jordan_Schaer@fd.org